630 So.2d 935 (1993)
STATE of Louisiana
v.
Marcus P. McPHERSON.
No. 93-KA-0839.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*938 Arcenious F. Armond, Jr., Gretna, for defendant-appellant Marcus P. McPherson.
Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State.
Before BARRY and KLEES, JJ., and JAMES C. GULOTTA, J. Pro Tem.
KLEES, Judge.
On June 22, 1992, the defendant, Marcus McPherson, was charged by bill of information with one count of purse snatching in violation of L.S.A.-R.S. 14:65.1. At his arraignment on July 10, 1992, the defendant pled not guilty. On December 10, 1992, after a jury trial, the defendant was found guilty as charged. On that date, the trial court ordered that a pre-sentence investigation be conducted. Defendant's sentencing was set for March 4, 1993. At the hearing on March 4, 1993, defense counsel made an oral motion for a new trial. The trial court denied the defendant's motion. The defendant was then sentenced to three years at hard labor and ordered to provide restitution to the victim for her medical bills. The restitution payments were deferred until the defendant was released from incarceration. The trial court further ordered that after release from prison, the defendant was to be placed on twenty-four months of supervisory probation. This appeal follows.

FACTS:
In the early afternoon of May 6, 1992, the seventy-seven year old victim, Sarah Gruwell, was walking home on Prancer Street from the Whitney bank located on Holiday Drive when the defendant approached the victim from the rear. He started running his fingers up and down her back. Ms. Gruwell then heard the defendant say "Give me your purse!" She turned around, saw the defendant and gave him the purse. The defendant put his hand on the back of her head and pushed her to the pavement. The defendant then ran away.
Ms. Gruwell was able to get up and walk to a neighbor's house. She called her son and the police. When the police arrived, she described the perpetrator as male, 5'10"-5'11", twenty to twenty-five years of age, shoulder length light brown hair, slender, and wearing an earring in his left ear. During a photographic lineup held on May 11, 1992, the victim identified the defendant. The victim identified the defendant at the motion to suppress hearing and at trial. As result of defendant's pushing her to the *939 ground, the victim suffered a broken shoulder bone and several fractured teeth.
Ms. Lucelia LeDoux testified at trial that at approximately 1:00 p.m. on May 6, 1992, she was driving on Vixen Street (a street which intersects with Prancer Drive) when she saw a man running across the street carrying a woman's purse. She described the man as being tall, skinny, with brown hair and wearing a sweatshirt, blue jeans, and a baseball cap. Ms. LeDoux watched as the man got into a blue car, an older model Datsun or Toyota, which was stopped at the curb. The car was running with someone in the driver's seat. She followed the vehicle and was able to get the license plate number. Ms. LeDoux called the police and reported the vehicle. Two days later, after reading about the purse snatching in the newspaper, she again contacted the police and gave them the license plate number of the vehicle. She was asked by the officers working on the case to go to the Fourth District. While there, she noticed the blue vehicle in the parking lot and informed the police officers.
New Orleans Police Officer Steven Andry responded to the call about the purse snatching and interviewed the victim. Officer Andry testified that the incident occurred near the intersection of Prancer and Vixen. After receiving the license plate number of the vehicle observed by Ms. LeDoux, Officer Andry was able to ascertain that the defendant was the owner of the vehicle. On May 7, 1992, the defendant was contacted and asked to come to the Fourth District. When the defendant arrived at the police station, he was informed that he was a suspect in the purse snatching and subsequently arrested. Officer Andry also handled the photographic lineup in which the victim identified the defendant. Andry further testified that Ms. Gruwell's purse was later recovered by a postal worker. Ms. Gruwell's purse had been found in a mailbox and returned to her by the postal employee.
The defendant's mother, Glenda Beck, testified at trial that the defendant was with her most of the day on May 6, 1992. She stated that the defendant was in her presence from 10:00 a.m.-11:30 a.m. and 12:30-1:30 p.m. on the day in question. She further stated that the defendant did not have a woman's purse with him. James Blanchard also testified on behalf of the defendant. Mr. Blanchard stated that he spent the entire day with the defendant and that the defendant did not commit the purse snatching. The defendant testified on his own behalf. He denied any involvement in the purse snatching.
Errors Patent and Assignment No. 8
A review of the record for errors patent reveals two errors. The first error occurred when the trial court sentenced the defendant immediately after denying the motion for new trial. The defendant did not expressly waive his right to the twenty-four hour delay between the denial of his motion for a new trial and the imposition of sentencing. C.Cr.P. art. 873. In fact, the defendant sought time to seek supervisory writs from the trial court's denial of the motion for a new trial.
In State v. Augustine, 555 So.2d 1331 (La. 1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant' sentence if the defendant attacks his sentence, even though the defendant fails to specifically allege this failure as an error on appeal. However, the Fourth Circuit, in State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991), held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal.
In this present case, the defendant specifically assigns as error the sentence imposed by the trial court. However, the defendant failed to file a motion to reconsider sentence pursuant to Code of Criminal Procedure article 881.1. The failure to file a motion to reconsider sentence precludes appellate review of the sentence. C.Cr.P. article 881.1; State v. Hudson, 618 So.2d 539 (La.App. 4th Cir.1993); State v. Lee, 618 So.2d 551 (La.App. 4th Cir.1993). Even though the defendant failed to file a motion to reconsider sentence, under State v. Augustine, supra, the defendant's sentence should be vacated and the matter remanded for resentencing.
The other error found upon review is the illegality of the sentence imposed. Under *940 R.S. 14:65.1, a person convicted of purse snatching "shall be imprisoned, with or without hard labor, for not less than two years and for not more than twenty years." However, in felony cases where the defendant has been placed on probation, an additional condition of probation "may be that the defendant shall serve a term of imprisonment without hard labor for a period not to exceed two years." C.Cr.P. article 895. In the present case, the trial court sentenced defendant to three years at hard labor. Upon release from jail, the defendant is to serve two years of active probation and make restitution to the victim. Thus, the sentence of three years at hard labor is illegally excessive. As defendant's sentence must be vacated because of the trial court's violation of C.Cr.P. article 873, any further discussion and/or action on this error is pretermitted.

Assignment No. 1
In his first assignment of error, the defendant contends that the trial court erred in denying his motion to suppress the identification. Specifically, the defendant argues that the trial court erred in failing to suppress the victim's identification of the defendant obtained through the photographic lineup held on May 11, 1993.
A defendant seeking to suppress an identification must show both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984). A photographic lineup may be unduly suggestive if the pictures display the defendant so singularly that the attention of the witness is focused on the defendant. State v. Flank, 537 So.2d 236 (La.App. 4th Cir.1988).
Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), set forth five factors to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
At the initial hearing on the motion to suppress held on August 21, 1992, Officer Steven Andry testified that he conducted the photographic lineup on May 11, 1992 at Tulane University Medical Center. The plaintiff was recuperating from surgery on her shoulder. The surgery, which had taken place on May 8, 1992, was necessitated by the injuries the plaintiff sustained in the incident. According to Officer Andry, the victim positively identified the defendant as the perpetrator of the crime. The officer further testified as to the procedure used in performing the photographic lineup. Officer Andry stated that he asked the victim to look at the photographs and see if she saw anyone that may have taken her purse on the day in question. He did not suggest, force or intimidate the victim into choosing the defendant's photograph. The officer further stated that the victim was physically able to participate in the photographic lineup.
At the continuation hearing on the motion to suppress held on September 18, 1992, the victim, Sarah Gruwell, testified as to the facts of the incident. She stated that the defendant approached her from behind. When he requested her purse, she turned around, faced him directly, and gave him the purse. The defendant then pushed the victim to the ground causing injury to her shoulder and face. She described the perpetrator as having long light brown hair, between the ages of twenty to twenty-five, about 5'11" tall and slender. Ms. Gruwell further testified as to the photographic lineup held on May 11, 1992. She stated that she was positive about her identification of the defendant. She further stated that she was not forced, coerced or intimidated into selecting the defendant's photograph. On cross-examination, Ms. Gruwell stated that the only medications she was taking at that time were for high blood pressure, potassium deficiency, and irregular heartbeat.
Upon review of the photographs used in the photographic lineup, it appears that the defendant is the only suspect with an earring in his ear. However, the earring is not easily visible in the photograph. One has to look closely at the photograph to see the *941 earring. While the defendant is the only person whose shirt has wording on it (defendant's tee shirt has "Soviet" written on it), such a discrepancy does not single out the defendant from the other suspects. In fact, a review of the photographs reveals that none of the suspects have similar facial characteristics. The only items in common among the men in the photographs are their hair color and builds. The photographs do focus attention on the defendant.
Reviewing the evidence presented at the motion hearings in light of the factors enunciated in Manson, the trial court did not err in denying the motion to suppress. Ms. Gruwell stated that she had a clear view of the defendant when he took her purse. She gave the officers a fairly accurate description of the defendant immediately after the incident. Ms. Gruwell identified the defendant at the photographic lineup which occurred only five days after the purse snatching. Further, Ms. Gruwell stated that she was not forced, coerced or intimidated into identifying the defendant. There was no evidence presented at the suppression hearings to suggest that the identification procedure was faulty and/or that Ms. Gruwell's identification of the defendant was not reliable. In addition, while the defendant was the only person in the photographic lineup wearing an earring and a tee shirt with wording on it, the defendant and the other persons in the photographic lineup had similar builds and hair color. The photographs used in the lineup did not "display the defendant so singularly that the attention of the witness" was focused on the defendant. Flank, supra.
This assignment is without merit.

Assignment No. 2
The defendant argues in this assignment that the trial court erred in its denial of his motion for mistrial based upon the statements made by two prospective jurors during voir dire.
When a remark made by a prospective juror is of such a nature that it might create prejudice against the defendant in the minds of the other prospective jurors, the court is required, upon the defendant's request, to admonish the jury to disregard the statement. C.Cr.P. article 771. Mistrial is a drastic remedy and should only be granted if the court is satisfied that an admonition is not sufficient to assure the defendant a fair trial. C.Cr.P. article 771; State v. Madison, 345 So.2d 485 (La.1977); State v. Gibson, 459 So.2d 1294 (La.1984).
In the case at bar, the incidents of which the defendant complains concern statements made by two jurors. One juror, Ms. Anita Baham, had formed an opinion of the defendant after overhearing a conversation between the defendant and other person. Ms. Baham stated that she felt that defendant was guilty because of his apparent aggressive behavior. She overheard the defendant tell someone "how you can `Kick the Mother Fucker's Ass if he jumps ingets in the way.' And he's not taking any shit from anyone." The juror initially discussed the incident at a sidebar conference with the judge, defense counsel, and the assistant district attorney. Another conference was held in the judge's chambers. It was during the conference in the judge's chambers that defense counsel requested a mistrial based on the statement the juror made at the sidebar conference. Ms. Baham stated during that conference in the judge's chambers that the first time she said anything about the matter was at the sidebar conference. The trial court denied the motion noting that the juror's comments were not within the hearing of the other prospective jurors.
Statements that were made by the lady, Ms. Baham, from the Jury Box were not inflammatory in nature. The statement from Ms. Baham is that she thought the defendant's aggressive behavior was an indication of possibly that he did in fact commit the crime charged.
That statement was made out of the earshot of the jury at a sidebar, with both the Defense and the Prosecution counsel present. That's a distance of about twenty-feet at a minimum from whereat least forty-feet from where the lady was sitting in the jury box from the remainder of the prospective jurors.
Your motion for mistrial is denied. I do plan to instruct the panelist (sic) when I return to the courtroom on not considering *942 any comments made by prospective jurors as evidence in the case. And I think we will move on.
Defense counsel then objected to the trial court's decision only to admonish the prospective jurors.
The second incident involved a juror who stated that his grandmother had been killed, and that looking at the victim, "it looks pretty easy to take something from her." Defense counsel immediately sought a mistrial. The trial court denied the mistrial and admonished the jury that
as I told you earlier in my opening remarks to you, nothing that is said unless it comes by way of sworn testimony or evidence introduced by the Prosecution in this case should be considered as evidence against the Defendant in this case. Statements made by members of the Venere (sic) Panel are not to be considered as evidence.
We're going through these series of questions to try to find six impartial Jurors who can be fair to both the Prosecution and the Defense. So nothing said by any one of the prospective Jurors should be considered as evidence, and has no bearing on your deliberations during the course of trial.
In State v. Cushenberry, 407 So.2d 700 (La.1981), the Louisiana Supreme Court upheld the trial court's ruling denying the defendant's motion for mistrial based upon statements made by a prospective juror. The juror testified that she had been robbed and that the defendant looked similar to the person who robbed her. In upholding the trial court's ruling, the Supreme Court noted that the defendant did not question the other jurors as to whether they heard the remark or if they were influenced by it. The Court found that the juror's statement was "less than overwhelming and would not have influenced any other juror even if it was heard." Cushenberry, supra at 702. The Court found that there was no showing of prejudice.
A prospective juror in State v. Hutto, 349 So.2d 318 (La.1977) stated that he heard that the defendant was the person who shot up the victim's house. In affirming the trial court's denial of the defendant's motion for mistrial, the court noted that there was no showing that the comments affected the other jurors. In State v. Blankenship, 496 So.2d 636 (La.App. 1st Cir.1986), a prospective juror who was a retired police officer testified that he knew the defendant. When the trial judge asked him how he knew the defendant, the juror stated that he had arrested the defendant previously. The trial court denied the defendant's motion for mistrial but admonished the other venire members to ignore any remarks they heard from the juror. The appellate court upheld the trial court's ruling noting that defense counsel did not question the other jurors as to whether they heard the remarks or were influenced by them. The court also recognized that the juror's knowledge of the defendant was unrelated to the present case and that the juror did not elaborate on the facts of his prior encounters with the defendant. Blankenship, supra at 637.
In denying the defendant's motions for mistrial, the trial court apparently concluded that an admonition to the jury venire was sufficient. While the comments made by Ms. Baham may have been prejudicial to the defendant, the remarks were not made within earshot of the other prospective jurors. The statement made by the other juror concerned the vulnerability of the victim. The comments did not reflect upon the guilt or innocence of the defendant. Furthermore, defense counsel did not question the other prospective jurors on whether they heard the comments made and/or if they would be influenced by the comments. There is no showing that the comments affected the other jurors and prejudiced the defendant in depriving him of a fair trial. The trial court was within its discretion in finding that an admonition was sufficient and denying the defendant's motions for mistrial.
This assignment is without merit.

Assignment No. 3
In this assignment, the defendant contends that the trial court erred in denying defendant's request for a mistrial based upon the state's failure to comply with its continuing duty to respond to the bill of particulars and motions for discovery. Defendant requested *943 a mistrial during the testimony of Officer Andry when it became known that the state had obtained the purse which the defendant had allegedly stolen from the victim. Officer Andry testified that the purse was recovered by a postal employee and returned to the victim by the postal employee. The purse had been found in a mailbox.
During a bench conference, the assistant district attorney stated that the victim informed her on September 18, 1992 that the purse had been returned. The assistant district attorney further stated that she did not know if the victim was going to bring the purse to trial and had not planned to use the purse. However, since the victim had brought the purse to court, the assistant district attorney decided to use the purse as evidence. The trial court found that the state had violated its continuing duty to disclose under C.Cr.P. article 729.3 and prohibited the state from introducing the purse into evidence and using it as demonstrative exhibit. The defendant then requested a mistrial arguing that jury had been able to view the purse as it had been sitting on the state's table during trial. The trial court denied the mistrial stating that the purse had not been displayed to any of the witnesses. Nor had any of the witnesses handled the purse.
Under Code of Criminal Procedure article 718, the defendant is entitled to "inspect, copy, examine, test scientifically, photograph,... tangible objects ... which are within the possession, custody, or control of the state, and which ... are intended for use by the state as evidence at the trial ..." Both the state and the defendant are under an obligation, if they discover additional evidence which is subject to discovery, to "promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection." C.Cr.P. article 729.3; State v. Strickland, 398 So.2d 1062 (La.1981). If either the state or the defendant fails to comply with the discovery rules, "the court may order such party to permit discovery or inspection, grant a continuance, order a mistrial on the motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate." C.Cr.P. article 729.5.
The trial court has the discretion to impose any of these sanctions. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, Knighton v. Louisiana, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Further, the failure of the state to comply with the discovery procedure does not automatically require reversal. The defendant must show prejudice before the court will reverse his conviction. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Ray, 423 So.2d 1116 (La.1982); State v. Ancar, 508 So.2d 943 (La.App. 4th Cir.1987). The reviewing court should examine the circumstances of the case to determine whether the defendant was prejudiced and if the trial court abused its discretion. State v. Knighton, supra.
In the present case, the trial court refused to allow the state to introduce the victim's purse into evidence and use the purse as a demonstrative exhibit. Prior to the court's ruling, none of the witnesses had referred to and/or handled the purse. There was nothing to suggest to the jury that the purse was indeed the purse taken from the victim. While the state had the obligation to allow defense counsel to examine the purse prior to trial, the state's failure did not necessitate a mistrial. Any prejudice which the defendant would have sustained as a result of the state's failure to inform the defendant of the recovery of the purse was eliminated by the trial court's ruling not to allow the state to introduce the purse into evidence.
This assignment is without merit.

Assignment No. 4
By this assignment, the defendant alleges that the trial court erred in denying his motion for new trial. At the sentencing hearing, the defendant orally moved for a new trial on the basis of newly discovered evidence. The defendant contended that he had just discovered that the victim had not been able to identify the defendant at the suppression hearing until the defendant was pointed out to her. In support of his motion, *944 defendant called his stepfather, Michael Beck, as a witness. Mr. Beck testified that
One of the Assistant Prosecutors, a lady with curly hair, a little more heavy-set, leaned over to Ms. Grouel (sic) and asked her to look around and see if she could see the man that pushed her down.
At that time Marc was outside smoking a cigarette. And he came back in. Ms. Grouel (sic) repeatedly turned around over her shoulder. Marc was sitting directly behind her. And she looked four or five times and neverlooked right at him and didn't recognize him.
When she was called to testify, Marc was outside once again. And that's when they brought Marc in. Before that she repeatedly looked for him and couldn't spot him in the Courtroom.
The defendant also informed the court that he had two other witnesses who would corroborate Mr. Beck's testimony, namely James Blanchard and Glenda Beck. It should be noted that both Ms. Beck and Mr. Blanchard testified at trial.
Under Code of Criminal Procedure article 851,
the court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment...
A motion for a new trial shall be in writing, state the grounds on which it is based, and be tried contradictorily with the district attorney. C.Cr.P. article 852. A motion for a new trial based on newly discovered evidence must contain allegations of fact, sworn to by the defendant or his counsel, showing:
(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discoverable before or during the trial;
(2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;
(3) The facts which the witnesses or evidence will establish; and
(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.
C.Cr.P. article 854.
Defendant sought a new trial based upon the testimony of his stepfather that Ms. Gruwell was not able to identify the defendant at the suppression hearing without the assistance of the district attorney. Defendant argued at the hearing that if he called his mother, Glenda Beck, and another witness, James Blanchard, they would corroborate Mr. Beck's testimony. One of the requirements that a defendant must meet in proving his right to a new trial is that, notwithstanding the exercise of reasonable diligence by the defendant, the evidence or defect in the proceedings was not discovered during trial. In the present case, the defendant has failed to meet this requirement. All three of the witnesses upon whom the defendant relies for his motion for new trial were present at the suppression hearings and at trial. In fact, two of the witnesses testified at trial. Furthermore, two of the witnesses relied upon were the defendant's mother and stepfather. The trial court was clearly within its discretion in denying the defendant's motion for a new trial.
This assignment is without merit.

Assignment No. 5
In this assignment, the defendant argues that the state failed to produce sufficient evidence to establish, beyond a reasonable doubt, that the defendant was guilty of purse snatching.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact *945 could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
R.S. 14:65.1 defines the crime of purse snatching as
the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
The victim, Sarah Gruwell, testified that she walking home on Prancer Street from the Whitney bank located on Holiday Drive when the defendant approached her from the back. He started running his fingers up and down her back. Ms. Gruwell heard the defendant say "Give me your purse!" She turned around, saw the defendant and gave him the purse. The defendant then put his hand on the back of her head and pushed her to the cement. The defendant then ran away. In the victim's purse was some jewelry, money, her billfold and some addresses. The jewelry and money were not in the purse when the purse was recovered.
Through the direct testimony of the victim, the state established that the defendant, by use of force and intimidation, took the victim's purse without her permission. The victim's testimony also established that the purse contained several items of value, namely jewelry and money. While the defendant and his witnesses testified that he was not involved in the purse snatching, the jury apparently chose to believe the victim's testimony. The determination of credibility of witnesses is a function of the trier of fact. State v. Bell, 315 So.2d 31 (La.1975).
There was sufficient evidence for the jury to find the defendant, beyond a reasonable doubt, guilty of purse snatching.
This assignment is without merit.

Assignment No. 6
The defendant contends that his due process rights were violated when the trial court denied his request for a subpoena duces tecum to Tulane University Hospital for the victim's medical records. This subpoena was sought at the suppression hearing. The defendant alleges that the medical records were necessary to adequately cross-examine the victim on her ability to identify the defendant during the photographic line-up. Defendant argues that the victim was probably on pain medication at time of the photographic lineup and that the medication may have affected her cognitive abilities.
In addition, the defendant argues that the trial court erred when it denied the defendant's request for an instanter subpoena duces tecum to the Communications Division of the New Orleans Police Department. The defendant sought to obtain the record of the call made by Ms. LeDoux to the police reporting the vehicle and license plate. The defendant did not seek such a subpoena until the morning of trial. The trial court granted the defendant's application for the subpoena but denied defendant's motion for a continuance until a return was made on the subpoena. The trial court noted the lateness of the request and the probability that the records no longer existed.
The defendant contends that the evidence sought in both subpoenas constituted exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Louisiana Supreme Court in State v. Rosiere, 488 So.2d 965, 970 (La.1986) set forth an explanation of the Brady rule:
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment. The Brady rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to insure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a *946 fair trial, that is, evidence favorable to defendant which is material to guilt or punishment. The test for determining materiality was firmly established in United States v. Bagley, [473] U.S. [667], 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome. United States v. Bagley, supra.
The mere possibility that an item of undisclosed information might have helped the defendant or might have affected the outcome of the trial does not establish "materiality" in the constitutional sense; the "reasonable probability" of a different outcome is required. United States v. Bagley, supra; State v. Dietrich, 567 So.2d 623 (La.App. 1st Cir.1990), writ denied, 568 So.2d 1079 (La. 1990).
In regards to the request for a subpoena duces tecum for the victim's medical records, the defendant contends that such evidence was material to the victim's ability to identify him. The defendant argued that the victim may have been under pain medication when the photographic lineup occurred. However, there has been no evidence introduced to support the defendant's allegation. In fact, Ms. Gruwell testified at the suppression hearing and at trial that she was not on pain medication on the date of the photographic lineup. In addition, immediately after the purse snatching, Ms. Gruwell gave the police a substantial description of the perpetrator. The victim also made an independent positive identification of the defendant at trial. The defendant has not shown that the victim's medical records would have led to a different trial result.
The defendant also argues that the trial court erred in refusing his request for an instanter subpoena to the Communications Division of the New Orleans Police Department for documentation concerning Ms. LeDoux's call. A review of the trial transcript reveals that the trial court granted defendant's request for the subpoena. However, the trial court denied defendant's motion to continue the trial until the following day in order to obtain the return on the subpoena. The trial court noted that there had been no showing that documents which defendant sought existed.
Defendant contends that the information sought from the Communications Division would confirm the date, time and content of Ms. LeDoux's call. Specifically, the defendant argues that the documents would reflect that a discrepancy exists between the time Ms. Gruwell stated the incident occurred and the time that Ms. LeDoux saw the defendant. However, such documentation would probably not have led to a different outcome in the trial as the witnesses' testimony reflected the discrepancy.
Ms. Gruwell testified that the purse snatching occurred around 2:00 p.m. on May 6, 1992. On cross-examination, Ms. LeDoux stated that she could not specifically recall the date of the incident, but thought it was May 6, 1992. Ms. LeDoux further testified that it was between 12:30 and 1:30 p.m. when she saw the defendant running with a purse under his arm. Further, the police report, which was introduced into evidence, reflected that the purse snatching occurred on May 6, 1992. A telephone call reporting the incident was received at approximately 1:40 p.m. Thus, evidence of the time discrepancy had been presented to the jury. The defendant has not shown that the introduction of the 911 tapes would have led to a different trial result.
This assignment is without merit.

Assignment No. 7
In this assignment of error, the defendant seeks review of the sentence imposed by the trial court. As the defendant's sentence must be vacated due to the failure of the trial court to sentence defendant twenty-four hours after the denial of the motion for new trial, this issue is pretermitted. Further, it should be noted that the defendant failed to file a motion to reconsider sentence pursuant to C.Cr.P. article 881.1. The failure to file a motion to reconsider sentence precludes appellate review of the sentence. C.Cr.P. article 881.1; State v. Hudson, 618 So.2d 539 *947 (La.App. 4th Cir.1993); State v. Lee, 618 So.2d 551 (La.App. 4th Cir.1993).
Accordingly, for the reasons above, the conviction of defendant Marcus P. McPherson is affirmed, the sentence is vacated and this matter is remanded to the trial court for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.