790 So.2d 109 (2001)
STATE of Louisiana
v.
Kenneth EDWARDS.
No. 01-KA-116.
Court of Appeal of Louisiana, Fifth Circuit.
June 27, 2001.
*110 Margaret S. Sollars, Thibodaux, Louisiana, for defendant/appellant, Kenneth Edwards.
*111 Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
DALEY, Judge.
Defendant, Kenneth Edwards, appeals from his conviction for second degree murder and his sentence to life imprisonment at hard labor. On appeal, he assigns the following errors:
1. The evidence was insufficient to support this conviction because the State failed to prove beyond a reasonable doubt that Mr. Edwards had the specific intent to kill Ms. Armant.
2. The defendant's Motions to Quash should have been granted.
3. The defendant's Motion for Mistrial should have been granted after evidence of another crime was introduced.
For the reasons which follow, we affirm the conviction and sentence.

PROCEDURAL HISTORY
On October 13, 1998, the St. James Parish Grand Jury issued an indictment charging defendant, Kenneth Edwards, with second degree murder, a violation of LSA-R.S. 14:30.1, for the killing of his girlfriend, Ismond Armant. The defendant was arraigned on November 2, 1998, and entered a plea of not guilty. The defendant was tried by a jury of twelve on September 21, 1999. At the conclusion of a two day trial, the jury returned a verdict of guilty as charged. On January 18, 2000, the trial court sentenced the defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant timely appealed.

FACTS
Lolita Armant, a cousin of the victim, Ismond Armant, testified that during the morning of August 23, 1998, Ismond Armant went to her house around ten o'clock and told her that she and the defendant, Mr. Kenneth Edwards, had an argument. Later that afternoon, Lolita was at a neighbor's house (Dannette Harris), when she heard a gunshot. Upon hearing the gun shot, she opened the door to see what was happening and she saw her cousin, the victim, Ismond Armant, coming towards her up the porch. Ismond entered the home and the defendant, Mr. Edwards followed her into the home. Mr. Edwards shot Ms. Ismond Armant once in the back of the head. As she fell in front of the sofa, he then shot her in the buttocks. Ms. Armant testified that Mr. Edwards did not say anything, and that he went "... in his pocket and got the gun and that's when he started shooting." She also stated that the gun was silver. Mr. Edwards then left, and 911 was called. Ms. Ismond died that evening from the gunshot wounds.
State's witness, Dannette Harris, a cousin of Lolita and the resident of the house where the murder took place, testified that she also witnessed Ismond Armant enter her home and that Mr. Edwards shot her in the back of the head and in the buttocks. She testified that when she saw the shots, she jumped off the sofa and ran to the back of the house because her children were back there.
Detectives Henry Vicknair and Gary Martin, of the St. James Sheriff's Office, were called out to the crime scene at around 3:45 p.m. Detective Vicknair testified, that when he arrived at the scene, he observed a black female lying face down. He took statements from Dannette Harris and Lolita Armant and photographed the scene. He found shell casings and a bullet that had been fired into the door frame of the house. Detectives Vicknair and Martin later went to Charity Hospital, where *112 upon arrival, Ms. Armant was already dead.
Several hours after the shooting, Mr. Edwards was arrested by Deputy Richard Miguez of the St. Charles Parish Sheriff's Office at a house in Kilona in St. Charles Parish. Deputy Miguez testified that he received a call from the dispatcher that someone called from the Stipe residence stating that Mr. Edwards was in their yard and they wanted the sheriff's office there right away. After the arrest, Deputy Miguez searched Mr. Edwards and found a clip for a .380 caliber pistol that contained seven rounds. According to Deputy Miguez, he then searched Mr. Edwards's vehicle, and under the driver's seat, he found a chrome .380 caliber semiautomatic pistol. The clip was empty, except for one round in the chamber of the gun. Detective Martin did a trace on the gun and found that it had belonged to the defendant.
After obtaining a search warrant, Detective Willy Taylor of the St. James Parish Sheriffs Office searched the vehicle and found a key to the Turner Hotel in Thibodaux. The day after the murder, Detectives Vicknair and Martin went to the Turner Hotel. Detective Vicknair testified that he spoke to the manager of the hotel, who informed him that Mr. Edwards had checked into the hotel and that the room had not been cleaned yet. They found a Winn-Dixie receipt, a sandwich, a sandwich holder, a Texaco bag, and a half gallon of milk in the room. According to Detective Vicknair, the bed appeared to have been slept in and was still unmade. The Winn-Dixie receipt stated "gallon of homo for $1.75." Detective Vicknair also testified that the hotel receipt indicated that Mr. Edwards had checked in at 11:10 a.m. on the day of the murder.
Mr. Charles Watson, testified for the State as an expert in the field of firearms examination. He tested the gun found in the defendant's car and matched bullets fired from the gun with the bullets retrieved from the victim and the door frame of the crime scene. He testified that the casings, fragments, and bullets obtained in this case were from the firearm found in the defendant's car.
The defendant, Mr. Edwards, was the only defense witness. Mr. Edwards admitted to shooting Ms. Armant. He testified that he did not plan to kill her, and that he was intoxicated at the time of the shooting. He testified that he and the victim had been living together since 1991, and they had two children. He stated that Ms. Armant would go out and leave for days at a time, and she had been gone for a couple of days before the day of the murder. He stated that he saw her the morning of the murder at her mother's house, however, she would not talk to him. He testified that he went and checked into the Turner Hotel in Thibodaux because he did not want to stay in their trailer. He stated that he bought two pints of gin and went to the hotel to drink and sleep. He testified that he woke up around 3:30 p.m. that afternoon and rode back to Vacherie. He went to her mother's house to talk to her, however, she was not there. The defendant stated that while he was riding around, he saw her on Martin Luther King Street and stopped to talk to her. He also stated that he did not remember what they talked about because he had been drinking heavily. After the shooting, he went to a friend's house to use the phone to call his mother to tell her he was turning himself in. Mr. Edwards stated that he was arrested before he could call.
On cross examination, Mr. Edwards testified that he did not remember what he said in a statement to Detective Hank Vicknair the day after the murder because he was still drunk. The final witness for *113 the State was Detective Vicknair. In rebuttal, he testified that he took a statement from Mr. Edwards the day after the murder. Detective Vicknair stated that Mr. Edwards did not mention that he was drunk or intoxicated or that he had been drinking. Detective Vicknair also testified that Mr. Edwards did not appear intoxicated when he took the statement. He stated that the only thing Mr. Edwards mentioned that he drank was milk. Detective Vicknair did not find any gin bottles in the hotel room nor a receipt.

ASSIGNMENT OF ERROR NUMBER ONE
In his first Assignment of Error, the defendant argues that the State failed to prove his guilt beyond a reasonable doubt, because the evidence was not sufficient to show that he had the specific intent to commit second degree murder. The defendant specifically argues that his extreme intoxication was never disproved, therefore, a reasonable doubt existed as to his guilt.
The standard to be used by the appellate court in evaluating the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. Jordan, 98-823 (La. App. 5th Cir.3/10/99), 732 So.2d 569.
La.R.S. 14:30.1 A(1) defines second degree murder as the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific intent may be inferred from the circumstances and actions of the defendant. State v. Patterson, 99-994, (La.App. 5th Cir.1/25/00) 752 So.2d 280, 283; State v. Lewis, 98-672, (La.App. 5th Cir.3/10/99), 732 So.2d 556, 559.
We find several factors that point to the defendant's specific intent to kill. The evidence adduced at trial established that Mr. Edwards and the victim had an argument in the early morning on the day of the murder. That afternoon after returning to Vacherie from the Turner Motel, Mr. Edwards stopped and talked to her on Martin Luther King Street. He then followed her to Dannette Harris's house where he shot her three times. The first shot was fired outside the residence and grazed the eyebrows of the victim. Dr. William Newman, who performed the autopsy of Ms. Armant, described the first of the three wounds as a superficial gunshot wound that appeared to go medial to lateral, which was associated with the swelling of the eyelids. The defendant next followed the victim into the Harris's residence and shot her in the back of the head as eyewitnessed by Lolita Armant and Dannette Harris. Dr. Newman testified that, considering that the wound in the back of the head was less than an inch in diameter, the muzzle was probably two or three feet away. Finally, the defendant shot the victim in the buttocks when she fell down in front of the sofa. These factors are sufficient for a rational trier of fact to find that the defendant intended to kill this victim.
The defendant asserts that he was drunk when he shot Ms. Armant and that her death was not planned. He argues that the State never disproved his extreme intoxication, therefore, there was no specific intent to kill Ms. Armant.
The fact of an intoxication or drugged condition of the offender at the *114 time of commission of the crime is immaterial except where the circumstances indicate that an intoxicated condition has precluded the presence of a specific criminal intent or of a special knowledge required in a particular crime. La.R.S. 14:15. Intoxication is in the nature of an affirmative defense to a criminal charge and the burden is upon the defendant to prove the existence of that condition at the time of the offense. State v. Leroux, 94-133 (La. App. 5th Cir.7/26/94), 641 So.2d 656, 662. When a defendant raises intoxication as a defense, he must prove, by a preponderance of the evidence, that he was in fact intoxicated. When circumstances exist which indicate that intoxication could have precluded specific intent, the burden shifts to the State to show, beyond a reasonable doubt, that specific intent was present. State v. Patterson, 99-994 (La.App. 5th Cir.1/25/00), 752 So.2d 280, 284; State v. Dammeron, 98-378, (La.App. 5th Cir.9/29/98), 719 So.2d 1151, 1154, writ denied, 98-2830 (La.2/26/99), 738 So.2d 1067. Whether intoxication is sufficient to negate specific intent is a question for the trier of fact. Id.
The only evidence produced by the defendant of his intoxication was his own testimony. Detective Vicknair, who searched the hotel room, did not find any liquor bottles or receipts of a purchase of liquor. He also testified that when he took the defendant's statement the next day, he observed no outward signs of intoxication.
On cross-examination of the State's eyewitness, Lolita Armant, defense counsel asked her about the appearance of Mr. Edwards, specifically whether he was staggering or swaying, at the time of shooting. She responded, "He was just standing straight up."
After considering all the events, testimony, and evidence, the jury returned a unanimous verdict of guilty of second degree murder. The jury, as trier of fact, was properly instructed and found that the defendant had the requisite specific intent when he killed the victim, despite the defendant's claim that he was intoxicated and did not plan to kill her. Considering the defendant followed the victim to the Harris residence from Martin Luther King Street, shot the victim in front of the residence, followed her in and shot her twice at close range, and left the scene and drove to a friend's house in St. Charles Parish, a rational trier of fact could have reasonably rejected the testimony of Mr. Edwards and his defense of intoxication.
Therefore, in viewing the evidence in the light most favorable to the prosecution, we find that the State proved the essential elements of second degree murder, and it was reasonable for the jury to find beyond a reasonable doubt that the defendant specifically intended to kill or do great bodily harm to the victim.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment, the defendant argues that the trial court erred in not granting his Motions to Quash the jury venire. There were two Motions to Quash the jury venire at trial. The first occurred when, after the first panel of prospective jurors was questioned and removed from the court room to allow the parties to state reasons for cause and utilize peremptory challenges, defense counsel moved for a mistrial and in the alternative, moved to quash the jury venire. This was based on the fact that a detective in the case was sitting in the audience of prospective jurors, and the defendant argues that this was prejudicial to his right to a fair trial.
The second motion occurred after the trial judge had questioned the second panel and before the State began its voir dire. The defendant moved to quash the entire second panel based on a comment by one *115 of the prospective jurors, which indicated that the prospective juror believed the defendant was guilty.
"A general venire shall not be set aside for any reason unless fraud has been practiced, or some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." LSA-C.Cr.P. Art. 419(A). The defendant bears the burden of proving grounds for setting aside the venire. State v. Lee, 559 So.2d 1310 (La.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). A mistrial is a drastic remedy, and should be ordered only where the defendant has suffered prejudice so substantial as to deprive him of any reasonable expectation of a fair trial. Of course, the purpose of voir dire examination of prospective jurors is to determine their competence and impartiality, and to afford counsel the basis to make challenges for cause and to secure information for the intelligent exercise of peremptory challenges. State v. Gipson, 28-113 (La.App. 2nd Cir.6/26/96), 677 So.2d 544, 550, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402.
After the first panel of prospective jurors was removed from the court room and before challenges were presented to the trial court, it was learned that Detective Lou Landry of the St. James Sheriff's Office was in the audience during the voir dire of the panel. Defense counsel moved for a mistrial and in the alternative, moved to quash the jury venire. The trial court questioned Detective Landry outside the presence of the jurors as to his presence in the audience during voir dire. Detective Landry responded that he was instructed by the bailiff to sit in the audience because he was subpoenaed as a potential juror. The trial court allowed the State and the defense to question Detective Landry. The State asked him if he spoke to any of the potential jurors about this case, and Detective Landry responded that he did not. Based on Detective Landry's testimony, the trial court denied the defendant's Motion to Quash the Jury Venire.
We find that the defendant did not suffer any irreparable injury or prejudice so as to deprive him of any reasonable expectation of a fair trial. Detective Landry testified that he did not speak to any of the prospective jurors about this case, and he was not examined in the first panel of prospective jurors.
The second motion occurred during the questioning by the trial judge of the second panel. The trial judge questioned Mr. Fernand Oubre, a panelist, if the fact that he heard about the murder in the community, would that influence him in any way. Mr. Oubre responded saying, "Oh, yes. To be honest with you, Judge, for me personally, the man is guilty." After the trial judge finished questioning the second panel and before the State began voir dire, the defendant moved to quash the entire jury venire arguing that the panel was tainted because of Mr. Oubre's remark. The trial judge denied the motion, stating,
"He (Mr. Oubre) did state what his opinion was, and that is what we're trying to find out in voir dire is if people have preconceived opinions, and I think the jury is well instructed that they are to decide this case based solely on the law and evidence. And some people have opinions which we've found out. Unfortunately, Mr. Oubre expressed his opinion, but the jury will be well instructed that they are to make their decision solely based on the facts and evidence presented. All jurors selected or to be selected will have to assure the Court that they can do so."
*116 In State v. Connolly, 96-1680, pp. 7-9 (La.7/1/97), 700 So.2d 810, 816-17, a prospective juror said she had heard that the defendant had molested children other than the one he murdered. The judge dismissed that panelist for cause, but denied the defendant's challenge for cause of the rest of the panel after asking each remaining panelist individually whether the remarks caused him or her to form a fixed opinion.
Several cases involving mistrial because of alleged prejudicial remarks were reviewed in State v. McPherson, 630 So.2d 935, (La.App. 4 Cir.1993). A prospective juror in State v. Hutto, 349 So.2d 318 (La.1977) stated that he heard that the defendant was the person who shot up the victim's house. In affirming the trial court's denial of the defendant's motion for mistrial, the court noted that there was no showing that the comments affected the other jurors. In State v. Blankenship, 496 So.2d 636 (La.App. 1st Cir.1986), a prospective juror who was a retired police officer testified that he knew the defendant. When the trial judge asked him how he knew the defendant, the juror stated that he had arrested the defendant previously. The trial court denied the defendant's motion for mistrial but admonished the other venire members to ignore any remarks they heard from the juror. The appellate court upheld the trial court's ruling noting that defense counsel did not question the other jurors as to whether they heard the remarks or were influenced by them. The court in McPherson, supra, at 941, held:
When a remark made by a prospective juror is of such a nature that it might create prejudice against the defendant in the minds of the other prospective jurors, the court is required, upon the defendant's request, to admonish the jury to disregard the statement. C.Cr.P. article 771. Mistrial is a drastic remedy and should only be granted if the court is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In the case at bar, we find that the defendant has failed to show any irreparable injury or prejudice, as required by LSA-C.Cr.P. art. 419(A). Mr. Oubre was dismissed before the parties began their voir dire. Both parties had the opportunity to question the second panel and to challenge any potential juror for cause or utilize their peremptory challenges. There has been no showing that Mr. Oubre's comment affected the other prospective jurors. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant's Motion for Mistrial should have been granted after evidence of another crime was introduced.
By this assignment, the defendant argues that the trial court erred in not granting its Motion for Mistrial after Officer Miguez stated that the defendant fought him during the arrest. The defendant argues that the trial court should have granted a mistrial because the evidence of the fight was another crime within the meaning of LSA-C.Cr.P. Art. 770. The defendant also argues that no notice was given by the State that it intended to introduce evidence of this crime.
During direct examination, Deputy Miguez stated that when he arrested the defendant in the yard of the Stipe residence, he could not remember which hand he got the handcuff on, but the defendant spun around and, ".. we started fighting in the yard." The trial court denied the Motion for Mistrial and stated that the court would instruct the jury in the closing instructions to completely disregard that portion of Deputy Miguez's testimony. *117 Defense counsel objected to the court giving such an instruction.
LSA-C.Cr.P. art. 770 mandates a mistrial upon motion of a defendant, "when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... another crime committed or alleged to have been committed by the defendant as to which evidence is inadmissible." However, we find that Art. 770 is not applicable in this case.
This court has held that a policeman is not a "court official" and, therefore, even if the policeman makes reference in his testimony to another crime, a mistrial under LSA-C.Cr.P. art. 770 is not required. The proper remedy would be upon request of defendant an admonition to the jury to disregard the remark. State v. Andrew J. Celestine, 98-1166 (La.App. 5th Cir.3/30/99) 735 So.2d 109, 114, writ denied, 99-1217 (La.10/8/99), 750 So.2d 178..
Since Deputy Miguez is not considered an "officer of the court" under art. 770, the appropriate remedy of the trial court was to admonish the jury under LSA-C.Cr.P. art. 771. LSA-C.Cr.P. Art. 771 states:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Forrest, 95-31 (La.App. 5th Cir.2/14/96), 670 So.2d 1263, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a Motion for Mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Brown, 96-1002 (La.App. 5th Cir.4/9/97), 694 So.2d 435, writ denied, 97-1310 (La.10/31/97), 703 So.2d 19.
In the case at bar, the State did not deliberately solicit the brief mention of this other crime. Deputy Miguez's remark was an indirect reference to another crime, which did not prejudice the right of the defendant to obtain a fair trial. The defendant objected to an admonition to the jury during closing arguments. We find that the trial court did not abuse its discretion in denying the mistrial.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. LSA.-C.Cr.P. art. 920.; State v. Oliveaux, 312 So.2d 337 (La.1975).
We note that the defendant was sentenced on January 18, 2000, and the trial judge incorrectly informed the defendant *118 that the prescriptive period for an Application for Post-Conviction Relief was three years. An amendment to LSA-C.Cr.P. art. 930.8, which became effective on August 15, 1999, shortened the prescriptive period from three years to two years. See 1999 La. Acts 1262. The amended article provides, in pertinent part:
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
* * *
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
Therefore, we hereby order the district court to send written notice of the amended prescriptive period to defendant within ten days of the rendering of this opinion, then to file written proof in the record that defendant received said notice.
For the foregoing reasons, the defendant's conviction and sentence are affirmed and this matter is remanded to the district court for the limited purpose of sending the defendant notice of the prescriptive period for seeking post conviction relief.
AFFIRMED; REMANDED WITH INSTRUCTIONS.