JUDE G. GRAVOIS, Judge.
| oDel'endant, Hassan A. Abdul, appeals his conviction of attempted second degree murder, a violation of LSA-R.S. 14:27 and 14:30.1. On appeal, he argues four counseled assignments of error, and three pro se assignments of error. For the following reasons, we affirm defendant’s conviction of attempted second degree murder, vacate defendant’s adjudication as a multiple offender and the enhanced sentence imposed in connection therewith, reinstate and affirm the sentence originally imposed on defendant as of result of his conviction of attempted second degree murder, and remand for further proceedings.

PROCÉDURAL HISTORY

On August 19, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Hassan A. Abdul, with attempted second degree murder (Count 1), in violation of LSA-R.S. 14:27 and 14:30.1, and possession of a firearm by a convicted felon (Count 2), in violation of LSA-R.S. 14:95.1. | ¿Defendant was arraigned the next day and pled not guilty. On April 4, 2011, the trial judge granted defendant’s request to represent himself. On May 2, 2011, the trial judge granted defendant’s motion to sever the two counts. Defendant’s motion to suppress identification was denied on May 3, 2011. On May 3 and 4, 2011, the matter proceeded to trial on the attempted second degree murder charge only, and a twelve-person jury unanimously found defendant guilty as charged.
On May 16, 2011, defendant filed a motion for a new trial, which was denied that same day. The trial judge then sentenced defendant to imprisonment at hard labor for twenty-five years. The State then filed a multiple bill of information alleging defendant to be a second felony offender, and defendant denied these allegations. After a hearing on May 16, 2011, the trial judge found defendant to be a second felony offender. The trial judge then vacated defendant’s original sentence and resen-tenced him under the multiple bill statute to imprisonment at hard labor for twenty-five years without the benefit of parole, probation, or suspension of sentence.
Also on May 16, 2011, defendant withdrew his not guilty plea as to Count 2 and pled guilty as charged. The trial judge then sentenced defendant to ten years im- ■ prisonment at hard labor on Count 2 without the benefit of parole, probation, or suspension of sentence, to run concurrently with the sentence on Count 1 and any other sentence being served by defendant. On May 18, 2011, defendant filed a timely motion for appeal that was granted. On May 20, 2011, defendant filed a timely motion to reconsider sentence that was denied. Defendant also filed a timely pro se motion for reconsideration of sentence on June 3, 2011 that was also denied.

\VRACTS

Christopher Young testified that on May 24, 2009, he was working at Knucklehedz,[1] *808 a bar he said was owned by him and defendant. After the bar closed about 2:45 a.m., Mr. Young went into the office and began “totaling out” the cash from the registers. Defendant was in the office as well. During that time, Mr. Young and defendant discovered that about $20.00 or $25.00 had been misplaced, and defendant became a little angry. Mr. Young then asked Jayven Tipado,[2] the bartender, to come into the office so that he could question her about the missing money. Ms. Tipado complied with that request, and the problem was subsequently resolved. Afterward, defendant rudely asked Ms. Tipa-do to leave the office.
After she left, Ms. Tipado sent a text message to Mr. Young saying that she did not mind assisting at the bar, but she was not going to let anybody talk to her that way. After Mr. Young explained to defendant that they needed all the help they could get, defendant had Ms. Tipado come back into the office, after which he apologized to her and paid her more money. Defendant and Ms. Tipado continued their conversation while Mr. Young continued “totaling out.” At approximately 3:00 a.m., Mr. Young said it was getting late, and he suggested that defendant and Ms. Tipado continue their conversation the next day. Defendant agreed and asked Ms. Tipado to leave the office and wait outside.
When defendant turned around, he said, “Chris, you don’t think I’ll shoot you, huh.” When Mr. Young asked defendant what he meant, defendant pulled a gun out from his waistband. Mr. Young did not know if defendant was joking. He asked him to put the gun away. Afterwards, defendant shot Mr. Young. ^Defendant then ran out the door, got on his motorcycle, and left. Mr. Young walked out of the office into the bar area and screamed for somebody to call the police because he had been shot by defendant. EMS came and took Mr. Young to the hospital. Later on, Mr. Young gave a statement to the police. He also positively identified defendant in a photographic lineup and in open court.
Ms. Tipado testified that she did not remember too much about the night in question, and she did not remember when Mr. Young got shot. She further testified that she had a young child and was reluctant to come to court. Ms. Tipado gave two statements to the police, but she only recalled the second one. Both statements were played for the jury. In her first statement, taken on May 24, 2009 at 4:26 a.m., Ms. Tipado said that when she went into the office, Mr. Young, defendant, and a third person[3] were arguing about money and the way defendant spoke to Ms. Tipa-do. Defendant, whom she testified was drunk, asked her to step out, and as soon as she did, she heard four shots. After-wards, Ms. Tipado saw defendant run out of the office with a gun in his hand and then run out the door of the bar. She subsequently heard defendant’s motorcycle pull off.
In her second statement taken on July 23, 2009, Ms. Tipado stated that defendant shot Mr. Young at approximately 3:30 a.m. on May 24, 2009. She explained that defendant and Mr. Young had an argument about a receipt and about the rude way defendant spoke to her. Afterwards, defendant asked her to step out of the office, and once she did, she heard at least four *809 shots. Defendant then walked out with a gun, and defendant’s wife brought the motorcycle “behind them.” Ms. Tipado further stated that she positively identified defendant as the 17perpetrator in a photographic lineup. She also positively identified defendant in open court.
Dr. Peter Meade, an expert emergency room trauma surgeon, testified that Mr. Young was shot seven times in his lower arm, left leg, abdomen, and buttocks. He further testified that no bullets perforated any organs or major blood vessels, but that all of the victim’s injuries were potentially fatal and could have caused permanent injury. Dr. Meade asserted that the victim tested positive for alcohol.[4] Sergeant Michael Goodwin of the Jefferson Parish Sheriffs Office testified that he recovered three fired cartridge casings from the office. Jené Rauch, an expert firearms and toolmark examiner, testified that all three casings were fired from the same weapon.
After the State rested its case, Hassan Alli-Abdul, defendant’s father, testified that he was the owner of Knucklehedz, and that Mr. Young was a bartender and not an owner. Deputy Demyrus Coffie testified for the defense that although he had testified during the State’s case that Mr. Young’s condition after the shooting was very severe, he testified at a preliminary examination that Mr. Young’s injuries were not life-threatening.

COUNSELED ASSIGNMENT OF ERROR NUMBER ONE

The evidence was insufficient to support the verdict in that it failed to prove beyond a reasonable doubt that the shooting was done with specific intent to kill given the abundant evidence of appellant’s intoxicated state.

In his first counseled assignment of error, defendant argues that the evidence was insufficient to support the verdict in that the State failed to prove beyond a reasonable doubt that the shooting was done with the specific intent to kill, given lathe evidence of his intoxicated state.[5] The State responds that defendant did not raise an intoxication defense at trial, and he cannot raise it for the first time on appeal. Alternatively, the State contends that there was nothing to indicate that defendant’s state of intoxication was so great that it precluded the formation of specific intent.
The provisions of LSA-C.Cr.P. art. 726(A) require advance notice of intent to use the defense of voluntary intoxication. State v. Quinn, 479 So.2d 592, 596-97 (La. App. 1 Cir.1985). The record herein does not indicate that defendant filed a notice of intent to use intoxication as a defense as required by LSA-C.Cr.P. art. 726. In fact, defendant indicated at a hearing the day before trial and again after closing arguments that he was not going to raise such a defense.
Evidence of defendant’s alleged intoxication did come out at trial, however. In *810 her first statement, Ms. Tipado said that defendant was “very drunk as usual,” and that “he just was drunk on that liquor as usual and once he gets drunk, he doesn’t think and this was the outcome.” The State did not object to evidence of defendant’s intoxication at trial. Therefore, we will address the merits of this claim.[6]
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond |9a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
Defendant was convicted of attempted second degree murder in violation of LSA-R.S. 14:27 and 14:30.1. Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. Attempt is defined as “[A]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended!/]” LSA-R.S. 14:27(A).
The crime of attempted murder requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 897. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Because specific intent is a state of | inmind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Lewis, 97-160, p. 6 (La.App. 5 Cir. 7/29/97), 698 So.2d 456, 459, writ denied, 97-2381 (La.3/27/98), 716 So.2d 881. It is well established that specific intent may be inferred from the act of pointing a gun and firing at a person. See State v. Noble, 425 So.2d 734, 736 (La.1983); State v. Slang, 94-332, p. 4 (La.App. 5 Cir. 11/16/94), 646 So.2d 1037, 1040, writ denied, 94-3063 (La.4/7/95), 652 So.2d 1344.
*811 Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Billard, 03-319, p. 5 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, 1072, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739. Positive identification by only one witness is sufficient to support a conviction. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
Evidence of flight, concealment, and attempt to avoid capture is relevant to show consciousness of guilt from which a jury may use to reach a verdict, and may also include another crime or bad acts. State v. Davies, 350 So.2d 586, 588 (La.1977); State v. Burbank, 07-125, p. 4 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, 1177, unit denied, 07-2287 (La.4/25/08), 978 So.2d 364.
Intoxication is in the nature of an affirmative defense to a criminal charge and the burden is on the defendant to prove the existence of that condition at the time of the offense. State v. Edwards, 01-116, p. 8 (La.App. 5 Cir. 6/27/01), 790 So.2d 109, 114, writ denied, 01-2235 (La.8/30/02), 823 So.2d 935. When a defendant raises intoxication as a defense, he must prove, by a preponderance of the evidence, that he was in fact intoxicated. When circumstances exist that h indicate that intoxication could have precluded specific intent, the burden shifts to the State to show, beyond a reasonable doubt, that defendant possessed specific intent. Id.; State v. Patterson, 99-994, p. 8 (La.App. 5 Cir. 1/25/00), 752 So.2d 280, 284, writ denied, 00-0753 (La.2/9/01), 785 So.2d 26. As the ultimate fact finder, the jury determines whether a defendant has proven intoxication and whether the State has negated the defense beyond a reasonable doubt. State v. Legrand, 02-1462, p. 7 (La.12/3/03), 864 So.2d 89, 96, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005).
In the present case, the State presented evidence to show that defendant was guilty of attempted second degree murder. The victim, Mr. Young, testified that defendant pulled a gun out and shot him. Additionally, in her statement, Ms. Tipado said that when she went into the office, defendant, Mr. Young, and a third person were in there arguing. After-wards, defendant asked Ms. Tipado to leave, and as soon as she did so, she heard at least four shots. Ms. Tipado said she then saw defendant run out of the office with a gun in his hand and out the door, after which she heard defendant’s motorcycle pull off. Further, Dr. Meade presented testimony that the victim was shot seven times in his lower arm, left leg, abdomen, and buttocks, and that all of the injuries were potentially fatal and could have caused permanent injury. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. State v. Durand, 07-4, p. 9 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied, 07-1545 (La.1/25/08), 973 So.2d 753. Defendant, on the other hand, indicated in closing argument that the' third person in the office committed the offense during a robbery.
11¾After considering the evidence, the jury apparently believed the State’s witnesses and rejected defendant’s version of events. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the *812 credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
As indicated above, positive identification by only one witness is sufficient to support a conviction. State v. Williams, supra. The State clearly met its burden of proving identity of defendant as the perpetrator, as both Mr. Young and Ms. Tipado positively identified defendant as the perpetrator in photographic lineups and in open court.
Additionally, defendant did not prove by a preponderance of the evidence that he was intoxicated. Although Ms. Tipado testified that defendant was drunk at the time of the incident, there was no evidence that showed how much alcohol or food defendant consumed that night, or the period of time over which the alcohol was consumed. Also, there was no expert testimony regarding the possible effects of the alcohol consumed. No other witness testified that defendant appeared intoxicated. Further, we find that the State showed beyond a reasonable doubt that defendant possessed specific intent. The evidence shows that defendant shot the victim seven times and then had the presence of mind to run away in an attempt to elude capture.
For the above reasons, we find that a rational trier of fact could have found under the Jackson standard that the evidence was sufficient to support the verdict. This assignment of error is without merit.

^COUNSELED ASSIGNMENT OF ERROR NUMBER TWO

It was error to fail to charge the jury as to the law applicable to the case.

Here, defendant argues that the trial judge erred by failing to charge the jury on the law applicable to the case concerning the defense of voluntary intoxication. The State responds that this issue is not properly before this Court because defendant failed to request in writing that such an instruction be given, and he failed to object to its exclusion from the jury charges.
At a pre-trial hearing, the prosecutor said that it had been mentioned in the statements that there was drinking involved in this case. She said she wanted to make sure that defendant was not going to raise the affirmative defense of intoxication. Defendant, who represented himself, replied, “Oh, no, no. I was not drinking. I never drink at my place of business.” The record also reflects that the trial judge later asked if there were any objections to the jury charges as written, and defendant twice responded negatively.
The State and the defendant shall have the right before argument to submit to the court special written charges for the jury. LSA-C.Cr.P. art. 807. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. Id.
LSA-C.Cr.P. art. 802 mandates that the trial court instruct the jury on the law applicable to each case. State v. Lawson, 08-123, p. 15 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 527. The court is required to charge the jury on the law applicable to any theory of defense, when properly requested, which the jurors could reasonably infer from the evidence. Id.
LSA-C.Cr.P. art. 801(C) provides:
|14A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
*813 This Court has held that a defendant is required to make a timely objection under Article 801 in order to preserve a jury charge issue for review. State v. Dauzart, 02-1187, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 167.
Here, defendant failed to preserve the jury charge issue for review because he failed to request that an instruction regarding voluntary intoxication be given as required by LSA-C.Cr.P. art. 801(C). Moreover, the record shows that defendant did not argue that his voluntary intoxication precluded the presence of specific intent. Rather, during closing argument, defendant argued that the shooting was committed by a third person during a robbery. Also, as was stated previously, defendant told the trial judge that he was not going to raise the affirmative defense of intoxication. This assignment of error is without merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER THREE

The trial court imposed an excessive sentence.

Next, defendant argues that his twenty-five-year enhanced sentence is constitutionally excessive.
Because we have vacated defendant’s adjudication as a multiple offender, and the enhanced sentence imposed by the trial court in connection therewith, as a result of our review of defendant’s Pro Se Assignment of Error Number Three, infra, we pretermit any review of this assignment of error as moot.
| ^COUNSELED ASSIGNMENT OF ERROR NUMBER FOUR

It was error to sentence appellant immediately following the denial of the Motion for New Trial without honoring the 2b[-]howr delay required by La.C.Cr. Pro. Art. 873.

Defendant next argues that the trial judge erred by failing to observe the 24-hour delay between denial of his motion for new trial and original sentencing as mandated by LSA-C.Cr.P. art. 873. The State responds that defendant tacitly waived sentencing delays, that he was not prejudiced because the trial judge imposed the mandatory minimum sentence, and that any error is moot because the original sentence was vacated prior to the imposition of the enhanced sentence.
LSA-C.Cr.P. art. 873 provides in pertinent part:
If a motion for a new trial ... is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article ... sentence may be imposed immediately.
The record does not reflect that defendant expressly waived the statutory delay. However, because the trial court imposed the mandatory minimum sentence in this ease, defendant was not prejudiced by the trial court’s failure to observe the delay, and accordingly, reversal of the prematurely imposed sentence is not required. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE

Whether, a “structural impairment” occurred in the Sixth Amendment due to “Conflict of Interest” not addressed during April k, 2011 and April 18, 2011 proceedings contrary to the holding announced in State v. Cisco, 861 So.2d 118 (La.2003), and thereafter — compelled defendant to represent himself without discharging Faretta v. California, 122 U.S. 805 [sic] [95 S.Ct. 2525, 15 L.Ed.2d 562 ] (1976[1975J) entena?
*814 |1fiHere, defendant indicates that the trial judge erred by denying his motion to appoint new counsel. He argues that he was forced to represent himself with the assistance of the same counsel he sought to replace. Defendant contends that he and his counsel had conflict, which violated his Sixth Amendment right to conflict-free counsel. He asserts that the conflict arose when his counsel told him he was guilty and that God could not help him.[7] Defendant further asserts that once the conflict of interest was made known to the trial judge, an inquiry under State v. Cisco, 01-2732 (La.12/3/03), 861 So.2d 118, cert. denied, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004), should have been applied. Lastly, defendant indicates that he was compelled to represent himself without the criteria in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), being met.
On April 1, 2011, defendant filed a motion for substitution of counsel arguing that his attorney, Powell Miller, had not and would not prepare an adequate defense for him on pre-trial issues and at trial. On April 4, 2011, at a hearing on the motion, defendant asked the trial judge for another State-appointed attorney; however, that request was denied because the trial judge explained that defendant did not have the right to pick and choose a particular public defender. She remarked that the trial had been set many times and that his trial was in less than 30 days. The trial judge stated that defendant could hire another attorney. Defendant’s counsel noted that defendant’s second choice was to represent himself, which the trial judge said defendant could do.
Afterwards, the trial judge told defendant she had to advise him of the dangers and disadvantages of self-representation, and that she had to determine whether he had the capacity to represent himself, and that he was literate and competent. Defendant told the trial judge that he had completed the twelfth grade, | i7after which the trial judge said that self-representation was almost always unwise and may be detrimental. She informed the defendant that he would receive no special treatment and would have to follow all of the rules of law and criminal procedure. Defendant knew the charges against him and that the maximum penalties for attempted second degree murder and possession of a weapon by a convicted felon were fifty years and fifteen years, respectively.
After a lengthy colloquy, the trial judge allowed defendant to represent himself. She thereafter appointed Mr. Powell as standby counsel to assist defendant with the rules of courtroom procedure and to answer legal questions. The trial judge found that defendant’s waiver of right to counsel was knowingly, intelligently, and voluntarily made, and that the assertion of the right to represent himself was clear and unequivocal.
The Sixth Amendment to the United States Constitution and Louisiana Constitution Article 1, Section 13 guarantee that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. If a defendant is indigent, he has the right to court-appointed counsel. State v. Reeves, 06-2419, p. 37 (La.5/5/09), 11 So.3d 1031, 1057, cert. denied, — U.S. —, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009). The right of a defendant to counsel of his choice has been implemented by LSA-C.Cr.P. art. 515, which provides in pertinent part that, “Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court.” An indigent defendant does not *815 have the right to have a particular attorney appointed to represent him. An indigent’s right to choose his counsel only extends to allowing the accused to retain the attorney of his choice if he can manage to do so, but that right is not absolute and cannot be manipulated so 11sas to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. Id.
The question of withdrawal or substitution of counsel largely rests within the discretion of the trial judge, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. See State v. Leger, 05-11, p. 43 (La.7/10/06), 936 So.2d 108, 142, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
In Cisco, supra, the Supreme Court set forth the law regarding conflicts of interest as follows:
The right of a criminal defendant to the assistance of counsel during the proceedings against him is a cornerstone of our legal system. “To be more than just a hollow right, our law requires that assistance of counsel be effective.” As a general rule, therefore, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant she is representing.
The issue of conflicting loyalties usually arises in the context of joint representation, but it can also arise “where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney.” In a pretrial context, regardless of how the conflict of interest issue arises, the trial court has two options to avoid a conflict of interest: appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. Failure to do one or the other in a case in which an actual conflict exists requires reversal.... Accordingly, in this case we are called upon to determine whether an actual conflict of interest existed and, if so, whether the defendant knowingly and intelligently waived his right to conflict-free counsel and whether the trial court took adequate steps to assure that defendant was afforded the very important requisite that the defendant’s representation be conflict free.
Cisco, 01-2732 at 16-17, 861 So.2d at 129-30 (citations omitted).
Because the record in Cisco did not establish that the defendant knowingly and intelligently waived his right to the assistance of conflict-free counsel, the Supreme Court reversed the defendant’s convictions and sentence. Cisco, 01-2732 at 25, 861 So.2d at 134-35.
119In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court recognized a defendant’s Sixth Amendment right to conduct his own defense by making a knowing and voluntary waiver of his right to counsel and thereby asserting his right to represent himself. Assertion of that right “must also be clear and unequivocal.” State v. Bell, 09-0199, p. 17 (La.11/30/10), 53 So.3d 437, 448, cert. denied, — U.S. —, 131 S.Ct. 3035, 180 L.Ed.2d 856 (2011).
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges, and the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. State v. Bruce, 03-918 (La.App. 5 Cir. 12/30/03), 864 So.2d 854, 857. In addition, *816 the court should inquire into the defendant’s age, education and mental condition, and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. Id.
Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each case. State v. Leger, 05-11, p. 53 (La.7/10/06), 936 So.2d 108, 147-48, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
Courts must indulge in every reasonable presumption against a waiver of counsel. State v. LaGarde, 07-288, p. 10 (La.App. 5 Cir. 10/30/07) 970 So.2d 1111, 1119. The trial court is given much discretion in determining whether the defendant’s waiver was knowing and intelligent. Id., 07-288 at 12, 970 So.2d at 1120. An appellate court should not reverse the trial court ruling absent an abuse |gnof its discretion. Id. The failure of a trial court to secure a valid waiver of counsel constitutes reversible error. Bruce, supra.
First, we find that the trial judge did not err by denying defendant’s motion to appoint new counsel, as it does not appear that defense counsel had an actual conflict of interest. The record does not show that defense counsel was simultaneously representing defendant and a State witness, nor does the record show that defense counsel was required to cross-examine a witness who was testifying against the defendant and who was a client of the attorney. Because an actual conflict of interest did not exist, the trial judge was under no obligation to determine whether defendant knowingly and intelligently waived his right to the assistance of conflict-free counsel.
Additionally, we find that the trial judge did not abuse her discretion by allowing defendant to represent himself with the assistance of counsel. During the Far-etta hearing, the trial judge ascertained that defendant knew the nature of the charges and the maximum penalties for the charges. The trial judge also advised defendant of the dangers and disadvantages of self-representation, and defendant indicated that he understood them. In addition, the trial judge determined that defendant had a twelfth grade education. He responded affirmatively when asked if he was positive that he wanted to represent himself. In light of the foregoing, it appears clear that defendant’s waiver of right to counsel was knowingly, intelligently, and voluntarily made, and that the assertion of the right to represent himself was clear and unequivocal. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO

Whether, a 6th Amendment violation, “after request made by the defense, ” and whether the state’s prosecution were in possession of any exculpatory on [sic] inculpatory statements pertaining to defendant guilt [sic] or \ 21 innocence, but in turn, the exculpatory information overwhelming would support alteration of the jury’s verdict of the greater charged offense?
In this assignment of error, defendant argues that exculpatory and impeachment information was not revealed to the defense during open file discovery. Specifically, he contends that the following documents, which he attached to his brief, were not available to the defense:
• a patient form reflecting that the victim had only three gunshot wounds (Exhibit A);
*817 • a discharge summary from Medical Center of Louisiana showing that there were only three gunshot wounds that were not life-threatening (Exhibit B);
• three Department of Radiology imaging reports (Exhibits C, D, and E);
• medical documents revealing that the victim was discharged one day after the incident (Exhibit F); and
• discharge instructions showing that the victim was to resume usual activity with no restrictions (Exhibits G and H).
He also indicates that the trial judge erred by prohibiting him from eliciting testimony at trial regarding the termination of former Jefferson Parish Sheriff’s Office (“JPSO”) Officer Shenandoah Jones (Exhibit I). Defendant asserts that all of this information could have changed the outcome of the proceedings.
On July 80, August 17, and November 10, 2010, the State issued subpoenas duces tecum to obtain the victim’s medical records from University Hospital. Defendant filed a pro se “Motion to Subpoena Duces Tecum” on September 1, 2010, asking the trial judge to order the State to produce the victim’s medical records from University Hospital. On April 25, 2011, defendant filed a pro se “Motion for Exculpatory Material.” On May 2, 2011, the State, in turn, filed a “Notice of Exculpatory Evidence,” stating that Officer Jones, who assisted Sergeant Spera in the taking of a taped statement of one of the witnesses, was fired for untruthfulness in connection with a traffic stop on September 24, 2010.
|aaOn May 2, 2011, at a pre-trial hearing, the prosecutor said that Dr. Peter Meade would be a witness in the State’s case, and that it was her understanding that “the medical records” had been provided “sometime before.” When the trial judge asked defendant if he had his medical records, defendant responded affirmatively. The prosecutor remarked that she would not be introducing the medical records except for the diagram page showing the wounds. Defendant thereafter acknowledged receipt of that page.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused, after receiving a request for the evidence, violates a defendant’s due process rights where the evidence is material either to guilt or punishment. Evidence is material if there is a reasonable probability, sufficient to undermine confidence in the outcome, that the evidence, if disclosed to the defense, would have changed the outcome of the proceeding or created a reasonable doubt that did not otherwise exist. State v. Knapper, 579 So.2d 956, 959 (La.1991). The failure to reveal such evidence adversely affects the defendant’s right to a fair trial. State v. Calloway, 97-796, p. 5 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, 562, writs denied, 98-2435 (La.1/8/99), 734 So.2d 1229 and 98-2438 (La.1/8/99), 734 So.2d 1229. Favorable evidence has been held to include both exculpatory and impeachment evidence. Id.
The prosecution must make timely disclosure of the favorable evidence to provide the defense with adequate opportunity to present the material effectively in its case. State v. Kemp, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. Brady and its progeny do not establish a general rule of discoverability, and not every case in which it is discovered post-trial that favorable evidence was withheld by the State will result in a reversal of the conviction. State v. Bright, 02-2793, p. 6 (La.5/25/04), 875 So.2d 37, 42. A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the “omission is of sufficient significance to *818 result in the denial of the defendant’s right to a fair trial.” Id. A Brady violation occurs when the evidentiary suppression “undermines confidence in the outcome of the trial.” Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).
In the present case, the record shows that defendant received the medical records prior to trial, and therefore, defendant had notice of the contents of those records. Even if this was not the case, defendant fails to show how the alleged suppression of the documents attached to his brief undermined confidence in the outcome of defendant’s trial. The main thrust of the State’s ease was the victim’s testimony that defendant shot him. Additionally, Dr. Meade testified that defendant was shot seven times, and that any bullet wound was life-threatening. The LSU Hospital diagram sheet, State’s Exhibit 53, which was admitted into evidence at trial without objection, corroborates the fact that the victim was shot seven times.
Defendant attached numerous exhibits to his pro se brief in support of his arguments; however, none of them except for the motion in limine could be located in the record. It is well settled that an appellate court is precluded from considering evidence which is not part of the record. State v. Pertuit, 95-935, p. 5 (La.App. 5 Cir. 3/13/96), 673 So.2d 1055, 1057. Nevertheless, even if the attachments are considered, defendant’s arguments pertaining to them are without merit. Exhibits A and B attached to defendant’s pro se brief reflect that the victim had multiple gunshot wounds, not three gunshot wounds as defendant has alleged. Exhibits C, D, and E, the three radiology imaging reports, do not appear to contain any information beneficial to defendant. With regard to Exhibit F, which shows l^that the victim was discharged from the hospital one day after the incident, the victim testified that he believed he stayed at the hospital for 48 hours. As such, the jury was made aware of the fact that he did not stay at the hospital for a relatively long period of time after the incident.
Defendant also indicates that the trial judge erred by prohibiting him from eliciting testimony at trial regarding the termination of former JPSO Officer Jones. On May 2, 2011, the State filed a “Motion in Limine to Prevent Discussion of Termination of Former JPSO Officer Shenandoah Jones.” In that motion, the State noted that Officer Jones was an assisting officer on the case and present when witness statements were taken, and that it was not planning on calling him as a witness. The State also noted that in September of 2010, Officer Jones was released from his employment due to untruthfulness in connection with a traffic stop. The State asserted that Officer Jones had no pending criminal charges and had not been convicted of any crimes. The State argued that the facts of his arrest and termination from the JPSO should not be presented to the jury because it was not relevant to any work he performed in this case.
At the hearing on the motion in limine, the State made basically the same arguments that it made in its written motion. Defendant’s assistant counsel explained the motion in limine to defendant, after which defendant had no objection to it. As such, the trial judge granted the motion.[8]
The Sixth Amendment to the United States Constitution guarantees the right of the accused in a criminal prosecution “to be confronted with the witnesses against him.” Additionally, the confrontation *819 clause of the Louisiana Constitution directly affords the accused the right to “confront and cross-examine the witness against him_” La. Const. Art. I, Sec. 16.
_JjgThe credibility of a witness may be attacked by any party, including the party calling him. LSA-C.E. art. 607(A). The right to impeach a witness for bias or interest is encompassed in the right of confrontation, and is specifically dictated by LSA-C.E. art. 607(D). State v. Hollins, 97-627, p. 5 (La.App. 5 Cir. 11/25/97), 704 So.2d 307, 309, writ denied, 99-507 (La.8/25/99), 747 So.2d 50. However, LSA-C.E. art. 608(B) provides: “Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of a crime as provided in Articles 609 and 609.1 or as constitutionally required.” LSA-C.E. art. 609.1(B) provides that “[generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.”
Despite the general rule, the possibility that the prosecution may have leverage over a witness due to that witness’s pending criminal charges is recognized as a valid area of cross-examination. State v. Wiley, 10-811, p. 15 (La.App. 5 Cir. 4/26/11), 68 So.3d 583, 592[9] (citing State v. Rankin, 465 So.2d 679, 681 (La.1985), and State v. Brady, 381 So.2d 819, 822 (La.1980)).
Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” LSA-C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by law, and irrelevant evidence is not admissible. LSA-C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by ^considerations of undue delay, or waste of time. LSA-C.E. art. 403. A trial judge’s determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La.10/3/03), 855 So.2d 308.
In State v. Wright, 10-577 (La.App. 5 Cir. 2/15/11), 61 So.3d 88, writ denied, 11-560 (La.9/30/11), 71 So.3d 283, the defendant argued that he was denied his right to present a defense when the trial judge prevented him from asking Detective Ro-drigue why Detective Barrette was no longer employed by the JPSO. This Court found that the defendant had not shown he was prejudiced by the limitation of cross-examination of Rodrigue, noting that Detective Rodrigue’s testimony had not been proffered, Detective Barrette did not testify at trial, and defense counsel elicited uncontroverted testimony that Detective Barrette obtained defendant’s statement by beating him. Id., 10-577 at 19-27, 61 So.3d at 100-03.
In State v. Hollins, 97-627 (La.App. 5 Cir. 11/25/97), 704 So.2d 307, writ denied, 99-507 (La.8/25/99), 747 So.2d 50, the defendant argued that the trial court erred in denying him the opportunity to question *820 the State witness, Mr. Frere, about his suspension from the Jefferson Parish Sheriffs Office for beating a New Orleans police officer whom he had wrongfully arrested. This Court found that evidence of Mr. Frere’s suspension was inadmissible for impeachment purposes under articles 608(B) and 609.1(B), because it did not involve a conviction. In a footnote, this Court noted that had the officer testified at trial that he was an emplbyee in good standing with the Sheriffs Office, then the defendant could have impeached him with extrinsic evidence that he had in fact been suspended. Id., 97-627 at 5-6, 704 So.2d at 309. See also State v. Bradford, 02-1452 (La.App. 4 Cir. 4/23/03), 846 So.2d 880, writ denied, 03-1410 (La.11/26/03), 860 So.2d 1133.
127In the present case, we find that the trial judge did not err by granting the motion in limine to preclude discussion of Officer Jones’ termination from the JPSO. Defendant does not specify in his brief exactly how the exclusion of this information prejudiced him. The record reflects that Officer Jones had relatively little involvement in the present case. Bradford supra. It appears he only assisted Sergeant David Spera in the taking of the second statement of witness, Jayven Tipa-do, on July 23, 2009. Although Officer Jones was present for the statement, he did not ask any questions. There do not appear to be any irregularities in the statement and none have been alleged by defendant. Additionally, Officer Jones did not testify at trial. Wright, supra; Bradford, supra. Further, the State represented that Officer Jones had not been convicted of a crime and had no pending charges. Hollins, supra. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE

Whether, Art. 920.2 permits this Honorable Court to review the bill of information under the Habitual Offender Bill which was instituted under an “Expired Predicate Offense" for the enhanced proceeding resulted in the Unconstitutional Sentence ? [sic]
Finally, defendant argues that the trial judge erred by finding him to be a second felony offender. He contends that the State failed to show that less than seven years had elapsed from the time when he was convicted of the 1997 predicate felony and the commission of the subsequent offense.
On May 9, 2011, the State filed a multiple bill of information alleging defendant to be a second felony offender. The State alleged that defendant committed the underlying offense and a predicate offense, namely, that he had pled guilty on February 27, 1997 in case number 384-810 in Orleans Parish to ^attempted second degree battery and was sentenced to serve three years at hard labor, suspended, with three years of active probation.
Until it was amended in 1994, LSA-R.S. 15:529.1, the habitual offender statute, provided for a cleansing period of five years. In 1994, the cleansing period was increased to seven years, and in 1995, to ten years. This Court has found that the applicable cleansing period is the one in effect at the time of the commission of the subsequent felony. State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 229, writ denied, 02-1489 (La.5/9/03), 843 So.2d 388. Because defendant committed the subsequent felony in 2009, the applicable cleansing period in this case is ten years, not seven years as defendant argues.
Defendant did not file a written response to the multiple bill, and he did not raise this objection concerning the cleansing period during the multiple bill hearing. Ordinarily, the issue would not *821 be properly preserved for appellate review. See LSA-R.S. 15:529.1(D)(l)(b) (Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.). However, since the sufficiency of the proof of the “cleansing period” bears on the defendant’s due process rights, courts can review the issue on appeal as an error patent. State v. Boiteux, 11-191 (La.App. 5 Cir. 12/13/11), 81 So.3d 123, 127-28, (citing State v. Mosley, 08-1319, p. 9 (La.App. 5 Cir. 5/26/09), 16 So.3d 398, 403).
The State bears the burden of proving that the predicate convictions fall within the “cleansing period” prescribed by LSA-R.S. 15:529.1(0. State v. Hollins, 99-278, p. 21 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 685, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587. This ten-year “cleansing period” begins to run from the date that a defendant is actually discharged from state custody and supervision. State v. Anderson, 349 So.2d 311, 314 (La.1977); State v. Thomas, 12904 — 1341, p. 15 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 906, writ denied, 05-2002 (La.2/17/06), 924 So.2d 1013. Thus, the commencement of the “cleansing period” is from the date of discharge from state supervision, because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. State v. Humphrey, 96-838, p. 13 (La.App. 5 Cir. 4/29/97), 694 So.2d 1082, 1088, writ denied, 97-1461 (La.11/7/97), 703 So.2d 35. However, if less than the “cleansing period” has elapsed between a defendant’s conviction on a predicate felony and his commission of a subsequent predicate felony, the State need not prove the date of discharge on the earlier sentence in the habitual offender proceedings. State v. Brooks, 01-864, p. 12 (La.App. 5 Cir. 1/29/02), 807 So.2d 1090, 1101.
In the present case, the certified records show that on February 27, 1997, defendant pled guilty to second degree battery. On July 16, 1997, the trial judge sentenced defendant to imprisonment at hard labor for three years, suspended, and three years of active probation. The underlying offense was committed on'May 24, 2009. Thus, more than the ten-year “cleansing period” elapsed between defendant’s conviction on the 1997 predicate felony and his commission of the subsequent offense. As such, the State was required to prove that the subsequent offense was committed within ten years of the defendant’s release from state custody for the predicate conviction. There is nothing in the record that shows the date of discharge from state custody. Therefore, the evidence was insufficient to prove that defendant was a second felony offender. Accordingly, we vacate the multiple offender adjudication and the enhanced sentence. Since double jeopardy principles are inapplicable to sentence enhancement proceedings, the State may |anretry defendant as a multiple offender if it so chooses. State v. Raymond, 98-119, pp. 9-10 (La.App. 5 Cir. 8/25/98), 718 So.2d 1010, 1014.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals the following errors patent.
LSA-R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the information, his right to a hearing, and his right to remain silent. State v. Haywood, 00-1584, p. 19 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 582. In the present case, the record *822 does not reflect that defendant was advised of his rights prior to the multiple bill hearing. The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when the multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant. Id., 00-1584 at 19, 783 So.2d at 582-83. In the present case, defendant denied the allegations of the multiple bill, and the State presented evidence at the hearing to establish his multiple offender status. However, the evidence was not sufficient to prove that defendant was a second felony offender, as noted above. The failure to advise defendant of his multiple offender rights was therefore not harmless error, but is nonetheless moot, as we have vacated defendant’s multiple offender adjudication and sentence as noted above.

CONCLUSION

For the reasons set forth in this opinion, we affirm defendant’s conviction of attempted second degree murder, vacate defendant’s adjudication as a multiple | S1 offender and the enhanced sentence imposed in connection therewith, reinstate and affirm the sentence originally imposed on defendant as of result of his conviction of attempted second degree murder, and remand for further proceedings.

CONVICTION AFFIRMED; MULTIPLE OFFENDER ADJUDICATION VACATED; ENHANCED SENTENCE VACATED; ORIGINAL SENTENCE REINSTATED AND AFFIRMED; REMANDED

WICKER J., concurs with reasons.

. The witnesses referred to the bar as "Knucklehedz” and "Knuckleheads.” The name "Knucklehedz” will be used in this opinion since that is the spelling shown in the photograph of the bar. Witnesses testified that the bar was located at 1800 Stumpf Boulevard in Gretna in Jefferson Parish.

. Ms. Tipado’s first name was spelled different ways in the record; however, the witness herself spelled it as "Jayven.”

. Deputy Demyrus Coffie testified that the third person was a co-owner, Melvin Davis. He further testified that Mr. Davis told him that he observed that defendant entered the office and asked the female to leave, and then Mr. Davis heard gunshots and saw defendant leave the establishment.

. Mr. Young admitted consuming two drinks after his shift ended.

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id.

. See State v. Snyder, 97-226, p. 12 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082, 1088, where the defendant argued that the evidence was insufficient to prove he had the specific intent to kill because his intoxication at the time of the offense precluded his forming the requisite specific intent; although the defendant did not file a notice of intent to use intoxication as a defense as required by LSA-C.Cr.P. art. 726, the State did not object to evidence of the defendant's intoxication at trial, and therefore, the merits of his claim were addressed.

. Defense counsel specifically denied making this statement.

. Generally, to preserve an issue for appeal, a party need not enter a contemporaneous objection to the court’s ruling on a written motion. LSA-C.Cr.P. art. 841 B.

. A writ was filed with the Louisiana Supreme Court in State v. Wiley, on June 16, 2011 (2011-KH-1263).