ROBERT A. CHAISSON, Judge.
| ^.Defendant, Larry McClure, appeals his convictions for attempted second degree murder and possession of a firearm by a convicted felon. Defendant maintains that his convictions should be reversed because he was denied his right to a fair trial when the trial court improperly allowed his statement into evidence at trial. For the reasons that follow, we find no merit to defendant’s arguments and accordingly affirm his convictions. However, because of errors noted herein, we vacate defendant’s multiple offender adjudication and sentence as well as the sentence imposed for his conviction for possession of a firearm by a convicted felon.

PROCEDURAL HISTORY

On August 3, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant, Larry McClure, with attempted second degree 13murder of Christopher Evans, in violation of LSA-R.S. 14:27 and 14:30.1 (count one), and possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1 (count two). At his arraignment the following day, defendant pled not guilty.
On January 18, 2013, defendant filed a motion to appoint sanity commission to determine his competence to proceed to trial. After a hearing on April 24, 2013, the trial judge found defendant competent to stand trial. On December 17, 2013, defendant filed a second motion to appoint sanity commission to determine his competence. The trial court conducted another sanity hearing on February 5, 2014, and once again found defendant competent to stand trial.
The matter proceeded to trial before a twelve-person jury on April 8, 9, and 10, 2014. After considering the evidence presented, the jury found defendant guilty as charged on both counts. On May 19, 2014, *1001 the trial judge sentenced defendant to imprisonment at hard labor for thirty years on count one and twenty years on count two. The court ordered that the sentences be served without benefit of parole, probation, or suspension and also ordered that they run concurrently.
The State filed a multiple offender bill of information alleging defendant to be a third felony offender. On May 22, 2014, after a hearing, the trial judge found defendant to be a third felony offender, vacated the original sentence on count 'one, and resentenced defendant under the multiple bill statute to imprisonment at hard labor for sixty years without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS

On May 4, 2010, Christopher Evans was shot numerous times in the Mary Poppins neighborhood located on the west bank of Jefferson Parish. This shooting apparently stemmed from incidents that occurred earlier in the day.
|4Puring the afternoon hours, Evans’s teenage female cousin had gotten into a fight with an older teenage girl, whose brother hit the younger girl. As a result of this altercation, Evans’s aunt called him to come “down the street” to Tallow Tree Lane to fight the boy who had hit his cousin. At approximately 3:00 or 4:00 p.m., Evans fought this boy, whom he identified as Robert McClure. Subsequent to this fight, Evans went inside a friend’s house in the neighborhood.
In the meantime, Clifton McClure received a phone call about this fight and proceeded to the Mary Poppins neighborhood with two of his cousins. Upon their arrival, they went inside a house for a little while, and by the time they came out, another cousin, defendant, had arrived. Defendant exited his car, entered the residence, came out with a gun, and squatted behind his car.
Evans went back outside at approximately 7:45 p.m. because he wanted to go buy some cigarettes. As Evans walked up a breezeway to Tallow Tree Lane, defendant met Evans in the street, and according to Evans, defendant swung a gun at his head. Evans ran across the street and went through an alleyway between two buildings as defendant chased him. Defendant pursued Evans and shot him six times, resulting in substantial injuries to the victim. Despite these injuries, Evans made it to a friend’s driveway at which time the police were called.
When Detective Nicki Gamier of the Jefferson Parish Sheriff’s Office arrived on the scene, she observed the victim, with several gunshot wounds, lying on the curb toward the street. Detective Gamier called an ambulance, and the victim was thereafter transported to the hospital.
Detective Chad Maekie of the Jefferson Parish Sheriffs Office, the lead investigator in this case, also arrived on the scene. After meeting with deputies in the 1100 block of Orange Blossom, the location where the victim was found, Detective Maekie proceeded to the 1100 block of Tallow Tree Lane, the location |swhere the chase began. Once at that location, Detective Maekie observed the red Camaro that, according to a 9-1-1 call, the shooter had earlier exited. He conducted a registration check on the vehicle and learned that it was registered to defendant.
The officers at the scene gathered witnesses and escorted them back to the detective bureau. One of the witnesses, Zek-isha Antoine, gave the officers a statement and positively identified defendant in a photographic lineup as the person she saw chasing the victim. The officers also obtained a statement from Evans and presented him with a photographic • lineup. *1002 Evans positively identified defendant as the person who shot him. Based upon their investigation and the positive identifications, the officers obtained an arrest warrant for defendant and effected his arrest on May 27, 2010.

ADMISSION OF DEFENDANT’S STATEMENT

In his sole assigned error on appeal, defendant asserts that the trial court erred when it allowed the statement he made at the time of his arrest into evidence.
On April 7, 2014, the State filed a “Notice of Intent to Use Inculpatory Statement Pursuant to the Louisiana Code of Criminal Procedure Article 768.” In the notice, the State claimed that defendant made an inculpatory statement during the course of his arrest on May 27, 2010. The State explained that defendant led officers on a foot chase, and that after defendant was detained and advised of his rights, Detective Monson asked him why he was running from the police. Defendant responded, “because I have warrants and because of that accident on Helen.” The State noted that Helen was the location where defendant shot his brother, Jermaine McClure, on May 27, 2010, and that a warrant was outstanding at the time for the charges in the instant case.
|fiAt the subsequent hearing on this notice, Detective Monson testified that on May 27, 2010, he placed defendant under arrest on an outstanding warrant for attempted second degree murder and use of a firearm. The detective further testified that he advised defendant of his rights, that he asked defendant if he understood his rights, and that defendant acknowledged that he understood them. After this exchange, Detective Monson asked defendant why he was running from the police. According to Detective Monson, defendant replied, “man, I had those, I had the warrant in that accident that just happened over there on Helen.” Detective Monson asserted that he did not compel or force defendant to make that statement and that defendant gave it freely and voluntarily. Following Detective Monson’s testimony, the State informed the court that a written statement was never taken from defendant.
The State then argued that the statement was admissible to show defendant’s guilty knowledge that he had an outstanding warrant for attempted murder. In response, defense counsel argued that the statement was not probative and should be excluded. After hearing these arguments, the trial judge ruled that the statement was admissible at trial.
Subsequently, during Detective Mon-son’s trial testimony, he testified as to the statement defendant made to him and the circumstances surrounding it. In accord with his testimony at the hearing, Detective Monson testified that on May 27, 2010, he arrested defendant on an outstanding warrant and advised defendant of his rights, including his right not to say anything. The detective thereafter asked defendant why he was running from police, to which defendant replied, “man, cause I got them warrants and that accident that just happened over there on Helen.”
17Pefendant now claims that the trial court erred in allowing his statement to Detective Monson into evidence because defendant lacked the mental capacity to make a willful and voluntary statement when confronted by police force. Defendant further contends that the State failed to meet its burden of proving that he understood the rights he was waiving before he gave a statement. For the reasons that follow, we find no merit to these arguments.
Before an inculpatory statement made during a custodial interrogation may *1003 be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[1] rights, that he voluntarily and intelligently waived those rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. State v. Smith⅛ 11-638 (La.App. 5 Cir. 3/13/12), 90 So.3d 1114, 1120. The voluntariness of a statement is determined on a case-by-case basis, and the trial judge’s conclusions regarding the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. State v. Fa-sola, 04-902 (La.App. 5 Cir. 3/29/05), 901 So.2d 533, 543, writ denied, 05-1069 (La.12/9/05), 916 So.2d 1055.
 In cases involving allegations of diminished mental capacity, a defendant has the burden of proving the existence of any mental abnormality that might render his confession per se involuntary. A diminished intellectual capacity does not alone vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. The critical factor is whether the defendant was able to understand the rights explained to him and voluntarily gave [ 8the statement. State v. Pugh, 02-171 (La.App. 5 Cir. 10/16/02), 831 So.2d 341, 352-53.
In the instant case, the record reflects that defendant was advised of his Miranda rights, that he voluntarily and intelligently waived those rights, and that the statement was made freely and voluntarily. Detective Monson testified at the hearing and at trial that he advised defendant of his rights after he arrested him following a foot pursuit. He testified at the hearing that after he advised defendant of his rights, he asked defendant if he understood those rights, and defendant acknowledged that he did. Detective Monson then asked defendant why he was running from the police, and defendant responded with the statement in question.
Although defendant contends that he lacked the mental capacity to make a willful and voluntary statement when confronted by police force, several factors indicate otherwise. First, the record shows that two competency hearings were conducted in which the trial judge found defendant competent to stand trial. Additionally, in the March 6, 2013 medical report upon which the trial judge’s finding was based, the doctors said that defendant was completely uncooperative and that he was malingering. As such, the doctors stated that they had no basis upon which to opine that defendant suffered from any mental disorder and no reason to recommend that he be found incompetent to proceed to trial. Also, in the January 22, 2014 medical report, the doctors said that defendant again was uncooperative, and they once again failed to find credible evidence that defendant suffered from a mental disease or defect which would impair his ability to meet the Bennett[2] criteria for competency to proceed.
Second, Detective Monson’s testimony that defendant’s statement was made freely and voluntarily was unrebut-ted. The testimony of an interviewing police | gofficer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. State v. Earls, 12-448 (La.App. 5 Cir. 12/11/12), 106 So.3d 1149, 1157, writ denied, 13-132 (La.9/20/13), 122 So.3d 1012. See State v. *1004 Milton, 13-672 (La.App. 5 Cir. 5/14/14), 142 So.3d 157, 172 (where this Court found that the defendant possessed the mental capacity to knowingly and voluntarily waive his rights, noting that the officers offered unrebutted testimony that the defendant’s statement was -made knowingly and voluntarily).
Third, there is no indication that defendant waived his rights or offered his statement under the influence of fear, intimidation, menaces, threats, inducements, or promises. Detective Monson testified at the hearing that he did not compel or force defendant to make the statement in question and that defendant made it freely and voluntarily. See Milton, 142 So.3d at 172 (where this Court found that the defendant possessed the mental capacity to knowingly and voluntarily waive his rights, noting that a detective testified at the suppression hearing that the defendant was not coerced into waiving his rights).
Fourth, the record shows that defendant was adjudicated a third felony offender, having been previously convicted of theft and simple burglary of a motor vehicle.. As such, defendant was familiar with the criminal justice system. See Milton, 142 So.3d at 171-72 (where this Court found that the defendant possessed the mental capacity to knowingly and voluntarily waive his rights, noting that the defendant was no stranger to the criminal justice system as evidenced by his adjudication as a second felony offender).
Lastly, defendant’s statement, wherein he indicated that he ran from the police because he had outstanding warrants, shows his appreciation for the consequences of his actions.
| mGiven these numerous factors, we find no merit to defendant’s argument that he lacked the mental capacity to make a willful and voluntary statement when confronted with police force. In addition, given Detective Monson’s un-rebutted testimony regarding the circumstances surrounding ' defendant’s statement, we likewise find no merit to defendant’s argument that the State failed to meet its burden of proving that defendant understood the rights he was waiving. Accordingly, we conclude that the trial court did not err in admitting this statement into evidence.
Moreover, even if the trial court erred in admitting this statement, such error can be deemed harmless under the circumstances of this case. The statement at issue was not a confession, was extremely short, and was not a direct reference to the crimes in the instant case. Rather, defendant’s guilt was established at trial through the testimony of the victim and eyewitnesses to the crime. Both the victim, Christopher Evans, and Clifton McClure, defendant’s cousin, testified that defendant chased Evans and shot him. Zekisha Antoine also testified that she heard gunshots and saw defendant chase Evans, after which she found Evans shot and lying on the ground. Additionally, Detective Mackie testified that the 9-1-1 center received a call that the shooter had exited a red Chevy Camaro in the 1100 block of Tallow Tree and began chasing the victim. When Detective Mackie went to that scene and checked out the vehicle, he learned it was registered to defendant.
Considering all of the evidence, we find beyond a reasonable doubt that the guilty verdict rendered in the instant case was surely unattributable to any possible error by the trial judge admitting defendant’s statement into evidence. Accordingly, we find no merit to the arguments raised by defendant in this assigned error.

TERROR PATENT REVIEW

We have also reviewed the record for errors patent according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 *1005 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals errors patent that require us to vacate defendant’s multiple offender adjudication and sentence, as well as to vacate his twenty-year sentence on the charge of possession of a firearm by a convicted felon.

Sufficiency of Evidence-Multiple Bill

Our review reveals that the evidence presented by the State was insufficient to prove that defendant was a third felony offender.
The multiple bill reflects that more than ten years elapsed between defendant’s commission of the underlying offense on May 4, 2010, and the second predicate conviction (simple burglary of a motor vehicle) on December 7, 1999. According to the multiple bill, defendant was sentenced to six years imprisonment in the Department of Corrections. However, the record does not contain defendant’s discharge date on that conviction.
The State bears the burden of proving that the predicate convictions fall within the “cleansing period” prescribed by LSA-R.S. 16:629.1(C). State v. Hollins, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 685, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587. In the instant case, the applicable period is ten years. See La. R.S. 15:529.1(0 as it existed at the time of the underlying offense in May of 2010. This ten-year period begins to run from the date that a defendant is actually discharged from state custody and supervision because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. State v. Abdul, 11-863 (La.App. 5 Cir. 4/24/12), 94 So.3d 801, 821, writs denied, 12-1224 (La.10/12/12), 99 So.3d 41 and 12-1226 (La.10/12/12), 99 So.3d 41.
Because the third and underlying felony was committed on May 4, 2010, more than ten years after the 1999 conviction, the State was required to prove the discharge date on the 1999 conviction. There is nothing in the record that shows the date of discharge from state custody. Therefore, the evidence was insufficient to prove that defendant was a third felony offender. Accordingly, we vacate the multiple offender adjudication and the enhanced sentence. Since double jeopardy principles are inapplicable to sentence enhancement proceedings, the State may retry defendant as a multiple offender if it so chooses. State v. Abdul, 94 So.3d at 821.

Illegal Sentence on Count Two

Our review further reveals that the trial court imposed an illegal sentence on defendant for his conviction of possession of a firearm by a convicted felon. The transcript reflects that the trial judge sentenced defendant on count two to imprisonment at hard labor for twenty years without benefit of parole, probation, or suspension of sentence. However, at the time that the offense was committed on May 4, 2010,[3] the penalty for a violation of LSA-R.S. 14:95.1 was imprisonment at hard labor for not less than ten nor more ■than fifteen years without benefit of parole, probation, or suspension of sentence and a fíne of not less than one thousand dollars nor more than five thousand dollars.[4] Thus, defendant was sentenced to *1006 five years more than the term allowed by law. Additionally, neither 11sthe transcript nor the commitment reflects the imposition of the mandatory fine required under the statute.
Because the corrected sentence remains within the trial court’s sentencing discretion, correction must be by remand for resentencing, rather than by an amendment by this Court. See State v. Napoleon, 12-749 (La.App. 5 Cir. 5/16/13), 119 So.3d 238, 249. Accordingly, we vacate the sentence on count two and remand the matter to the trial court with instructions to resent'enee defendant in accordance with the sentencing provisions of LSA-R.S. 14:95.1 at the time of the offense.
For the reasons set forth in this opinion, we affirm defendant’s conviction for attempted second degree murder, vacate defendant’s adjudication as a multiple offender and the enhanced sentence imposed in connection therewith, and reinstate and affirm the sentence originally imposed on defendant as a result of his conviction for attempted second degree murder. We likewise affirm defendant’s conviction for possession of a firearm by a convicted felon, but vacate the twenty-year sentence imposed in connection therewith, and remand the matter for resentencing in accordance with this opinion.

AFFIRMED IN PART; VACATED IN PART; REMANDED

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. State v. Bennett, 345 So.2d 1129 (La.1977).

. The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520.

. Acts 2010, No. 815, § 1 amended the statute to provide for a maximum sentence of twenty years. That amendment took effect on August 15, 2010.